HONORABLE JOHN D. BATES, UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Docket No.: <u>CR-06-349-01</u> |
| vs. | |
| MAIRENA, Doug | Disclosure Date: <u>March 5, 2007</u> |

*Revised 3-29-07*

## RECEIPT AND ACKNOWLEDGMENT OF PRESENTENCE INVESTIGATION REPORT

**FILED**
APR 1 6 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

This is to acknowledge that each of the undersigned has received and reviewed the Presentence Investigation Report (PSR) in the above-entitled case. The undersigned further acknowledges that:

### For the Government
(CHECK APPROPRIATE BOX)
(X) There are no material/factual inaccuracies therein, *but see attached.*
(X) There are material/factual inaccuracies in the PSI report as set forth in the attachment herein.

_____   4-16-07
**Prosecuting Attorney**                         3-16-07
                                                        **Date**

### For the Defendant
(CHECK APPROPRIATE BOX)
( )  There are no material/factual inaccuracies therein.
( )  There are material/factual inaccuracies in the PSI report as set forth in the attachment.

_____   _____   _____   _____
**Defendant**                    **Date**           **Defense Counsel**        **Date**

### NOTICE OF OBLIGATION OF THOSE EXECUTING THIS FORM

Pursuant to Local Rule 32(f)(2), those executing this form shall first submit any material inaccuracies or disputes in writing by <u>March 19, 2007</u>, to U.S. Probation Officer <u>Sherry Brandon</u>, telephone number <u>(202) 565-1327</u>, fax number <u>(202) 273-0242</u>.

Pursuant to Rule 32(b)(6)(B), effective December 1, 1994, it shall be the responsibility of the Attorney for the Government and the Defense Counsel to provide each other with a copy of the objections at the same time the objections are filed with the probation office.

**FOR THE COURT**

**By:** Gennine A. Hagar, Chief
United States Probation Officer

*RECEIVED FRONT OFFICE 2007 MAR 30 P 2:05 U.S. PROBATION OFFICE DISTRICT OF COLUMBIA*

Objections to the Presentence Report
United States v. Doug Mairena

Cr. No. 06-349 (JDB)

Page 7, paragraph 25:
The defendant should be given an enhancement for Abuse of Position of Trust, pursuant to Section 3B1.3.

> The defendant, Doug Mairena, as Controller, had access to more information and possessed more authority than the typical FAH employee. Abusing his position of trust, the defendant used his power and knowledge to hide his crime. The D.C. Circuit set forth factors that should be considered in determining whether a particular position constitutes a position of trust. These factors are:
>
>> The extent to which the position provides the freedom to commit a difficult-to-detect wrong, and whether an abuse could be simply or readily noticed; defendant's duties as compared to those of other employees; defendants' level of specialized knowledge; defendant's level of authority in the position; and the level of public trust.

United States v. Robinson, 198 F.3d 973, 977 (D.C. Cir. 2000) (granting the two-level increase for the director of a school for emotionally disturbed students).

The defendant used his position to hide his crime in a variety of ways: For example, once FAH's bank returned the falsely altered checks and the bank statements, the defendant destroyed the evidence of the crime by destroying the altered checks and, at times, other documents such as the bank statements or reconcilations associated with those checks.

Second, in order to hide the embezzlement scheme, the defendant would under-report the amount of deposits. For example, and for illustrative purposes only, the defendant recorded in FAH's books that he deposited $120,000 in member dues into the FAH's operating account, when, in truth, the defendant deposited $180,000. This excess money created a "slush fund" from which the defendant could embezzle without raising awareness of "missing" money.

Third, the defendant also was able to trick the auditors. He understood the extent of the year-end auditors' review; he was familiar and friendly with the auditors. Indeed, it was these auditors who had recommended that FAH hire the defendant in the position of Controller. Having been with FAH for several years, and having the same set of auditors, the defendant knew that the auditors would review only the bank statements for January and December. Thus, the defendant greatly curtailed his embezzlements during the months of January and December. Setting aside 2003 (when the defendant only embezzled about $11,000), the defendant chose to embezzle money almost exclusively from February to November in the years 2004 and 2005 (of course, the defendant left the employment of FAH in November 2005, so he would not have had an opportunity to steal from FAH in December 2005).

In January 2004, the defendant embezzled $1,525 from altering just one check.[1] In February 2004, however, the defendant altered eight checks to embezzle $15,620; in March 2004, twelve checks for $23,202.[2] From February 2004 up to and including November 2004, the defendant altered 74 checks, or an average of about 7 checks per month to steal an approximate average of $14,250 each month. Then in December 2004, he paused. In December 2004, the defendant embezzled no money for himself, although he altered three checks to Mark Freeman.[3]

Again in January 2005 – no embezzled money and no altered checks. In February 2005, the defendant began his scheme again, with six altered checks to embezzle $11,890. On average, from February 2005 to when he left in November 2005, the defendant altered a total of 89 checks, which averaged to about 9 checks per month to steal a monthly average of about $17,000. All in all, for 2004 and 2005, the defendant altered 163 checks for about $317,703 for himself (and additional checks and money for co-schemer Mark Freeman), but with virtually no embezzlement activity for January 2004, December 2004, January 2005, the months which the defendant knew would be reviewed by the auditors.

Therefore the government believes that the defendant's sentence should be increased by two levels for abuse of position of trust.

---

[1] There is one other $750 check which the forensic accountants labeled as "potentially fraudulent" dated January 2004, but this (and other) "potential fraudulent" amounts are not included in the embezzled funds for purposes of the plea, "loss" under Federal Sentencing Guidelines, or restitution.

[2] None of these amounts include the money from checks that the defendant altered for Mark Freeman.

[3] Again, two checks for about $1,415 dated in December are identified as "potentially fraudulent," but this money is not included as the fraud amount.